ADAMS, STATE REVENUE AGENT *v.* PEOPLES' BANK OF BILOXI *et al.*

[66 South. 407.]

TAXATION. *Banks. Assessment. Res judicata.*
   Section 4273, Code 1905, section 3764, Code 1892, and Laws 1890, page 6, provided a special plan for the taxation of banks, requiring the officers to deliver to the assessor a sworn statement showing the number and amount of all shares of stock, when paid in, and the sum of all undivided profits and surplus and accumulation of any sort constituting part of the bank's assets, not including real estate, and that the value of such shares estimated at par and increased by the proportion of the par value of all shares of stock to a surplus or accumulation, shall be the basis of taxation of such shares to the owner, and, if the shares are of less value than par they shall be valued accordingly. Un-

der this statute since an "assessment," is the listing and valua-
tion of property, and the roll is not conclusive against the public
as to what property the taxpayer owns, but only as against the
taxpayer that he is the owner or taxable for property shown on
the roll, and as against the taxpayer and the public that the
valuation of the enumerated property is as finally shown on the
roll; where certain banks returned statements failing to state
the number and amount of shares of stock, but stating the
amount of capital, and the surplus and undivided profits, from
which a large amount was deducted for "loans possibly uncol-
lectible," an assessment made on such statements, though in-
cluding under a subhead, "personal property not otherwise men-
tioned," was not *res judicata*, so as to prevent the state revenue
agent from making an additional assessment on "Capital Stock,
surplus, and undivided profits," as omitted property.

APPEAL from the circuit court of Harrison county.
HON. W. H. HARDY, Judge.

Proceeding by Wirt Adams, state revenue agent, for
the assessment of the First National Bank of Gulfport
and the Peoples Bank of Biloxi, on capital stock, surplus,
and undivided profits alleged to have escaped taxation.
From an order of the board of supervisors vacating the
assessment, affirmed by the circuit court, the revenue
agent appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

*Ford & White* and *Bowers & Griffith,* for appellee.

REED, J., delivered the opinion of the court.

In accordance with the statute (section 4740 of the
Code of 1906), the revenue agent gave notice to the tax
collector of Harrison county to assess the First National
Bank of Gulfport and the People's Bank of Biloxi, by
way of additional assessments on the roll in his hands
with certain property, to wit, "capital stock, surplus,
undivided profits and any and all other property assessa-
ble to the banks" which had escaped taxation during each

of the years from 1902 to 1907, inclusive, by reason of
not having been assessed. Objections were made by the
banks to such assessments. The board of supervisors,
upon the hearing, ordered that the assessments for back
taxes be denied, rejected and vacated, and stated in the
orders that the property sought to be taxed had been as-
sessed for taxes for the years mentioned. On the hear-
ing upon appeal in the circuit court before the judge,
jury being waived, the judgments of the board of super-
visors were affirmed. From the judgments of the cir-
cuit court, this appeal was prosecuted by the revenue
agent. The assessments of the two banks are considered
together as one case.

It was agreed by counsel that the action of the board
of supervisors, in canceling the assessments for the years
1902 and 1903 against the People's Bank of Biloxi, is cor-
rect and should be affirmed. The liability for taxes
against that bank for the year 1904 was admitted, and
at this hearing we deal only with the assessments against
the bank for the years 1905, 1906, and 1907.

The First National Bank of Gulfport had not been or-
ganized in 1902, and the assessment for that year was
omitted. In 1903 the First National Bank was assessed
under the heading, "Amount of money, United States
legal tender notes, and other notes and certificates of the
United States payable on demand and circulating or in-
tending to circulate as currency, and gold and silver or
other coin on hand, or in deposit or loaned;" in 1904,
"Capitol stock and surplus;" in 1905, "Capital stock and
undivided profits;" 1906 and 1907, "Personal property
not otherwise enumerated."

The People's Bank was assessed in 1905, "Amount of
bonds, certificates, script or other forms of indebtedness
of the state, or any county, city, town, village, board, or
body capable of being a debtor, held by the person ren-
dering the list and in whose behalf it is rendered;" in
1906, "Amount of indebtedness to the party assessed

which he regards as probably collectible;" and for 1907, "Amount or other personal property not otherwise mentioned."

The statute (section 4273 of the Code of 1906; section 3764 of the Code of 1892; Laws of 1890, p. 6) provides a special plan for the assessment for taxation of banks. Therein it is required that the officers of the banks shall deliver to the assessor of taxes of the county a written statement, under oath, of the number and amount of all its shares of capital stock, when paid in, "and of the sum of all undivided profits or surplus or accumulation of any sort constituting part of the assets of the bank and not including its real estate." "The value of such shares estimated at par and increased by the proportion of the par value of all the shares of the stock to the said surplus fund or accumulation . . . shall be the basis of the taxation of such shares . . . to the owner thereof." If the shares of the bank are of less value than par, they shall be valued accordingly.

For the purpose of illustration, we give below two of the statements delivered by officers of the banks to the county assessor, one for each bank, both for the year of 1907:

"State of Mississippi, Harrison County.

"To the Tax Assessor of said State and County—Sir: I beg to deliver to you written statement of stock of the People's Bank of Biloxi, Mississippi, to wit:

Amount of capital paid in ..............:....$18,935 00
Surplus fund ........................,....... 40,000 00
Amount of undivided profits Feb. 1st .......:.. 15,166 00

Total ...............................$74,101 59
Less percentage of loans possibly uncollectible,
    and to come out of surplus by deduction ... 48,586 65

                                         $25,514 94

Less real estate, already assessed and which
    was bought out of capital ............... 8,835 00

      Total amount assessable ............... 16,679 94
"Sworn to and subscribed before me this 2d day of
February, 1907."

"Statement of Assessable Property of the First Nat.
      Bank, Gulfport, Miss., February 1, 1907.

| | | |
|---|---:|---:|
| Capital stock paid in Surplus and undivided profits | $250,000 00<br>76,500 00 | |
| Less: | | $326,500 00 |
| Real estate ............... | 25,000 00 | |
| Allowance 10 per cent on bills receivable for insolvent credits ............ | 106,000 00 | |
| Allowance 2 per cent for interest on outstanding certificates of deposit.... | 4,650 00 | |
| Allowance 2 per cent for unearned interest on bills receivable ............... | 21,200 00 | |
| Total amount of personal property, for assessable valuation ............................. | | $156,850 00 |
| | | $168,650 00 |

           "————————, Vice President.

"State of Mississippi, Harrison County.

"Before me,, the undersigned, a notary public in and
for said county, personally appeared W. A. King, vice
president of the First National Bank, Gulfport, Miss.,
who being duly sworn, says that the foregoing statement
is correct and true to the best of his knowledge and belief.

"Sworn to and subscribed before me this —— day of
——, 1907.

           "————————, Notary Public."

All of the statements returned by the bank officers
omitted to state the number and amount of shares of the

capital stock paid in. They state the amount of capital stock paid in and of the surplus and undivided profits, and from this they deduct certain sums. In the case of the People's Bank it will be noted, in the copy of the statement given above, that the "percentage of loans possibly uncollectible," amounting to nearly two-thirds of the total of the capital stock and accumulation, was deducted. In the statement of the First National Bank a deduction was made of certain allowances on bills receivable, etc., which reduced the amount of the capital stock about fifty per cent.

At the hearing in the circuit court, cashiers of both banks testified. A. B. Austin, cashier of the People's Bank, testified that there had been no impairment of the capital stock of the bank during the years in question; that it had been above par, and that. there had been a surplus in the bank, which surplus had not been impaired, but had been increased; that none of it had been charged off on account of bad debts. H. A. Jackson cashier of the First National Bank, testified that the capital stock of that bank was not worth less than par during any of the years of the back assessments, and that the surplus had increased.

The evidence shows that, during the whole period covered, the capital stock and surplus of the banks were worth dollar for dollar. The statements returned by the bank officers were for a much less amount than the value of the banks' stock and accumulations. The amounts on the assessment rolls were those given as balances after deductions in the statements. The shares of the bank appear therefrom to have been at less value than par, when it is shown by testimony that they were of equal or greater value. The banks, therefore, were not assessed with all of the property on which they should have paid taxes. According to the statements and the assessments in the case of the First National Bank, there was no surplus really assessed. The assessments were all less

in amount than the actual capital stock paid in. In the People's Bank, deducting the real estate, the amounts were less than the capital stock; including the real estate as a part of the capital stock, a little more.

It was claimed in the objections filed by the bank, to the notice by the revenue agent, that the statements returned, and the assessments thereon, constituted a full showing by the banks of their assessable property, and that the approval by the board of supervisors of the rolls, with such assessments thereon, made them legal and sufficient assessments of the capital stock and accumulations, and rendered the matter *res adjudicata* against the state and county. In this appeal appellees contend that this is so, even though such assessments were entered, not as items of capital stock and surplus, but under other subheads for property subject for taxation.

The scheme for the taxation of banks under the statute in this state is distinct from that for the taxation of other corporations or individuals. It is the purpose of the statute to assess the banks on the amount of its capital, together with undivided profits, surplus, or accumulations of any sort. If the shares of the capital stock are less than par, they shall be properly valued.

The returns by the banks were not made in accordance with the statutory plan and requirement. The statements contained deductions of estimated amounts which, from the testimony, were wholly incorrect. The results or balances on the statements, which purported to show the value of capital stock and accumulations, were for very much smaller amounts than the proof showed to be correct.

In the instances where the assessments were not on the rolls as capital stock, surplus, or undivided profits, but under other subheads, the assessments were not sufficient to show that the banks were assessed with their assets, as required by law. It is claimed that this error occurred because there was no place on the assessment roll fur-

nished for the assessment of bank stock, etc. We notice, however, that for two years such assessments were entered by the assessor under the heading of capital stock and surplus.

In the case of *Revenue Agent* v. *Clarke,* 80 Miss. 134, 31 So. 216, it was held that:

"The rule of *res adjudicata,* in reference to assessment for taxation, rests upon the same basis as that of other judgment."

The judgments in this case were the orders of the board of supervisors in approving the final assessment rolls. Such approvals determined what were the assessments made.

In *Revenue Agent* v. *Clarke, supra,* it was said that:

"One who relies upon the conclusive effect of a prior decision must be able to show that the precise point was decided in that proceeding."

We quote from the opinion in that case as follows:

"The taxpayer is advised by law of the time and place when the question of valuation will be finally settled, and he must then and there attend or take notice of the final action of the board, and, if dissatisfied therewith, appeal to the next term of the circuit court of the county. When no appeal is taken, the statute declares the roll to be conclusive. Code, sec. 3787. The question is conclusive of what? It is not conclusive of the fact that the roll contains all the taxable property of the person named on the roll, although the list required to be made by the taxpayer, and the roll made by the assessor, contains a blank for nonenumerated personalty, under the head of 'amount of all other personal property not otherwise mentioned,' for the Code expressly provided for the assessment of any property that escapes assessment. Code, sec. 3768. Since an assessment is the listing and valuation of property, and since the roll is not conclusive against the public as to what property the taxpayer owns, it follows that the judgment of the board can only be

108Miss.23

conclusive of these two facts: First, as against the taxpayer, that he is the owner or taxable for the property shown on the roll; second, as against the taxpayer and the public, that the valuation of the enumerated property is as finally shown on the roll."

The judgments in this case of the board of supervisors in approving the rolls adjudicated that the banks owned and were taxable for the property shown on the roll. They were conclusive that the banks were assessed for taxes on the particular property described under the subheadings of the roll. They were conclusive and former adjudications only of the assessments of capital stock, undivided profits, and surplus, when the roll actually showed such assessments. They were not conclusive of the assessment of capital stock, etc., when the banks' assets were listed under such subheadings as "Amount of indebetedness probably collectible," amounts of money, etc., and "Property not otherwise mentioned."

The assessments against the First National Bank for the years 1904 and 1905 were properly made, and on the roll showed that the bank was to pay taxes on property it owned, and with which it was assessed under the scheme for taxing banks provided in the statute; that is, on its capital stock and accumulations.

It is claimed that the assessments of the banks under the subhead of personal property not otherwise mentioned is sufficient, because it included all personal property owned by the banks which had not been already listed. We cannot agree to this proposition. We repeat, that there is provided by law a distinct and special plan for the taxation of banks. They are not taxed with the loans due them or bills receivable, but upon the value of their assets, consisting of their capital stock, undivided profits, surplus, or accumulations of any sort. They are required to give the number and amount of the shares of their stock, and to state the fact if such shares are worth less than par. The board could not say, from an

assessment under the head of "Personal property not otherwise mentioned," whether the bank was paying on its capital stock, etc., as required by law, or whether the bank actually owned other property subject to taxation in addition to its capital. Such description is not definite. The property is not identified.

The banks in this case are not in the position to say, from the approved assessment rolls, that their capital stock, undivided profits, and surplus have been assessed and taxed so that none has escaped taxation during the years in question, and none is at present subject to the collection of back taxes thereon. The judgments of the board of supervisors finally approving the rolls, except in the years herein stated, do not show assessments of the property owned by the banks, and sought to be assessed for back taxes, with such definiteness and sufficiency as to constitute a former adjudication and preclude the revenue agent from assessing it.

*Reversed and remanded.*

Smith, C. J. (dissenting in part).

I am of the opinion that the assessments of the First National Bank for the years 1906 and 1907, and of the People's Bank for the year 1907, are *res adjudicata*, and therefore cannot now be reopened. To that extent I dissent from the conclusion reached by my associates.